Merrimack
No. 86-341

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL MAYA

July 10, 1987

*Stephen E. Merrill,* attorney general (*T. David Plourde,* assistant attorney general, on the brief), by brief for the State.

*Joanne Green,* assistant appellate defender, of Concord, by brief for the defendant.

JOHNSON, J.   The defendant appeals his conviction for burglary, RSA 635:1, on the basis that the Trial Court (*Dickson,* J.) erred in not giving a requested supplemental instruction to the jury, in response to jury questions, relative to the apparent authority of the victims' children to authorize the defendant's entry into the victims' home at the time of the burglary. We affirm.

The following facts were established at trial. On Thursday, April 4, 1985, Linda and James Drewniak left their New London home for a one week vacation in the Bahamas. During their absence the Drewniaks made arrangements for their two minor children, Richard Spaulding, age seventeen, and Glen Drewniak, age nine, to stay with the Drewniaks' daughter Sandra Barton at her home in New London. Sandra and Richard each had a key to the Drewniak residence. Sandra was asked to periodically check the house and feed the family cats, while Richard was told not to enter the house during his parents' absence.

Despite his parents' admonition, Richard did enter the home the following evening to watch television, and he further planned a large social gathering of friends at the home for the evening of Saturday, April 6. Invitations were made orally to approximately 100 of Richard's friends. One of the invitees was the defendant's younger brother. The defendant was not one of the persons invited. Richard's party was never held, however, because a resident of the town became aware of his plans and threatened to call the police, causing Richard to cancel the party. Sandra checked the house that Saturday, switched off lights and locked the doors.

Early Monday evening, Sandra and her brother Glen returned once again to check the house. Upon their arrival, they found that there was a light on in the house and that the front door was unlocked. When Sandra entered the home, she believed that Richard might be present and called out his name. The defendant responded and later identified himself as "Tom Chadwick." Neither Sandra nor Glen recognized the defendant. The defendant told them that he was waiting for Richard to return with some beer. Shortly thereafter the defendant left the premises stating that he would meet Richard later. He was observed to be carrying a large knife in his back pocket and a grocery bag.

Sandra found the encounter rather unusual. She called Richard's place of employment and was told that he had just left at 7:30 p.m. Sandra met Richard at their parents' home at approximately 9:00 p.m. that same evening. Sandra told Richard what had transpired earlier in the evening, and Richard assured her he had been at work. Sandra then called the police and placed a call to her mother, explaining to her what had happened, and her mother provided information as to where valuable items were usually kept in the house.

A police search of the interior of the house revealed that a number of valuable items were missing, including a silver spoon collection, pocket watches, a large knife and jewelry. The police searched the exterior of the house and found a single set of fresh footprints leading to a rear window. The defendant's fingerprints were found on a metal box in the house. At trial, Glen identified the defendant as the individual he and his sister had encountered on the evening of the burglary.

A few days after the burglary, the owner of a coin store in West Lebanon, who had periodically done business with the defendant in the past, notified the Vermont State Police that he had purchased some gold and silver items from the defendant, and that he had some suspicions about the circumstances of the sale. The Drewniaks

came to the coin store and identified the items as those stolen from their home. The defendant was subsequently charged with burglary under an indictment alleging that he:

> "did, with a purpose to commit the crime of theft therein, enter the residence of James and Linda Drewniak, Homan Lane, New London, New Hampshire, an occupied structure adapted for the overnight accommodation of persons, not then open to the public, and Michael J. Maya being neither licensed nor privileged to enter."

Mrs. Drewniak, Sandra Barton and Richard Spaulding all testified that they had never authorized the defendant to enter the residence. The trial court instructed the jury on the law following the conclusion of the evidentiary phase of the trial. During deliberations, the jury asked the trial court the following questions:

> "Please define who had or has the legal right to open up the house to the public?
>
> What is open to the public?
>
> Is this one of the five legal elements which is a key in the determination of this case?
>
> Does any occupant of the house have the right to open the house to the public?"

The trial judge reassembled the jury and gave the following response:

> "Now directing myself to your specific questions, who had or has the legal right to open up the house to the public, my answer to that is the owners, Mr. or Mrs. Drewniak. What is open to the public? The plain meaning of the word as contained in the statute means places such as libraries, hotel lobbies, restaurants, public buildings, this court house. Is this one of the five legal elements which is a key in the determination of this case? The answer is, to the extent that you are dealing—if that refers to open to the public, the answer is no, under the facts of this case, based on the evidence that has been presented, unless you find that Mr. and Mrs. Drewniak opened it to the public. Does any occupant of the house have the right to open the house to the public? The answer is no."

Following this charge, defense counsel objected and requested an instruction on apparent authority. He suggested that since both Sandra and Richard had keys to the house, they had apparent authority to open the house to the public and grant a license or

privilege to a person to enter the house. At the bench conference, the State took the position that the jury's questions were limited to the jury's stated concerns relative to "open to the public," and not to the authority of the children to grant a particular person or persons a license or privilege to enter the premises. The trial court then stated that it would discuss the issue of apparent authority if the jury returned and asked a license or privilege question. Also, after the bench conference, the judge modified his prior response as to whether "open to the public" was an element of the offense.

On appeal, the defendant argues that the trial court's supplemental instruction to the jury was erroneous in that it misstated the law in the area of consent to enter, failed to explain the concept of apparent authority, and, in effect, took a factual issue away from the jury. Specifically, the defendant contends that the jury's four questions, taken as a whole, indicated the jurors' concern over the issue of consent to enter the premises. Thus, he argues, the trial court should have explained the law of apparent authority, including the ability of those clothed with apparent authority to grant a license or privilege to another to enter premises over which they exercise some control.

The fact that the Drewniaks gave two of their children keys to the house could be construed as some evidence that the children had been clothed with the authority to give consent to another to enter the premises for a particular purpose. Even if the defendant had considered the issue of apparent authority to be a defense in his case, there was no evidence that Sandra or Richard authorized his entry at any time, either expressly or by implication. He was not invited to the canceled party on Saturday, nor was he authorized to enter the premises on the following Monday. While there may have been apparent authority for the children to grant permission to enter the premises, it was never exercised in the defendant's favor.

■■ If a theory of defense is supported by some evidence, then an instruction on that theory must be given to the jury. *State v. Williams*, 127 N.H. 79, 80, 497 A.2d 858, 859 (1985). However, where, as here, there simply was no evidentiary basis for a requested jury instruction, the party who requests the charge is not entitled to it, and the trial court is not required to give the requested instruction. *Id.*

■ While we agree that the jury's questions may have been focused on the requirement that the entry to the premises be trespassory in nature in order to prove burglary, we conclude that,

on the facts of this case, the trial court was correct in refusing to instruct the jury on the apparent authority of the children to permit entry into the house.

*Affirmed.*

All concurred.